**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASON ALTHEIDE,<br><br>        Plaintiff,<br><br>        v.<br><br>DR. ANGELINE DE GUZMAN, et al.,<br><br>        Defendants. | NO. CV 13-2793 SVW (SS)<br><br>**MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

**I.**

**INTRODUCTION**

On June 6, 2013, Jason Altheide ("Plaintiff"), a mentally disordered offender ("MDO") proceeding <u>pro se</u>, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (the "Complaint"). At the time of the incidents alleged in the Complaint, Plaintiff was a parolee detained at Atascadero State Hospital as an MDO pursuant to California Penal Code section 2962 as a condition of his parole.[1] (See Complaint

---

[1] Penal Code section 2962 provides that a prisoner who meets certain criteria "shall be required to be treated" as a condition of

at 14).[2]  For the reasons stated below, the Complaint is dismissed with leave to amend.[3]

## II.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff names as Defendants the following eight employees of Atascadero State Hospital:  (1) Dr. Angeline De Guzman, psychiatrist; (2) Dr. William Knowlton, psychiatrist; (3) Dr. Marc Reiner, psychiatrist; (4) Dr. David Fennel, chief forensic psychiatrist; (5) Suzy Brady, psych-tech advocate; (6) Jeanne McLean, psych-tech coordinator; (7) Thomas Cahill, chief medical director; and (8) Linda Persons, executive director.  (Complaint at 3-5).  Plaintiff sues all Defendants in their official capacities only.  (See id.).

The Complaint alleges that on August 9, 2012, Dr. De Guzman ordered that Plaintiff be given Haldol, a first-generation antipsychotic drug, despite his refusal to take the medication.[4]  (Complaint at 6).

---

parole.  Cal. Penal Code § 2962.

[2]  The Court will cite to the Complaint and its attachments as though they formed a single, consecutively-paginated document.

[3]  Magistrate judges may dismiss a complaint with leave to amend without approval of the district judge.  See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

[4]  See United States v. Grigsby, 712 F.3d 964, 966 & n.1 (6th Cir. 2013) (noting that first-generation antipsychotic drugs such as Haldol "can cause pseudoparkinsonism (stiffness, shuffling, tremors, slow movements, stooped posture, difficulty walking)," among other side effects, and that long-term usage may render these side effects irreversible).

Plaintiff further alleges that Dr. De Guzman "then ordered the same drug to be involuntarily applied" until November 16, 2012. (Id.). However, according to Plaintiff, the California Department of Mental Health Wellness and Recovery Plan regarding Plaintiff, completed at Atascadero State Hospital and finalized on August 3, 2012, indicates that Plaintiff has "[a]llergies to Haldol and Thorazine (cause him to lock up)." (Id. at 15). As a result of the involuntary administration of Haldol, Plaintiff claims that he suffered severe side effects that were diagnosed by a neurologist as "substance [i]nduced Parkinsonism." (Id. at 7).

Plaintiff's first Medication Review Hearing was held on August 10, 2012. (Id. at 6). Plaintiff wanted to attend but did not because he was in "Full Bed Restraints" in another room, as noted in the Involuntary Psychotropic Medication Review Hearing Decision. (Id. at 6 & 11). Plaintiff alleges that his psych-tech advocate at the hearing, Ms. Brady, improperly "proceeded with the hearing knowing that [Plaintiff] wanted to be present," and that Ms. McLean, the psych-tech coordinator, "should have suspended proceedings until [Plaintiff] could have been present . . . ." (Id. at 6). Even though "only one side of the information" was presented at the hearing, Drs. Knowlton, Reiner and Fennel determined that the criteria for involuntary medication had been met and authorized administration of Haldol for two weeks, to August 24, 2012. (Id. at 6 & 11).

A follow up hearing was held on August 23, 2012, which Plaintiff attended, this time represented by Ms. McLean. (Id. at 12). According to the hearing decision signed by Drs. Knowlton, Reiner, and a third

3

doctor not named in the Complaint, Plaintiff claimed that he did not have a mental disorder and "appear[ed] to want to negotiate his own med regimen." (Id.). This new panel confirmed that the criteria for involuntary medication had been met and authorized the continued administration of Haldol to February 18, 2013. (Id.).

At some point, Plaintiff filed an administrative complaint challenging the involuntary administration of Haldol. (Id. at 6). Plaintiff alleges that Dr. Cahill, chief medical director, and Ms. Person, executive director, "failed to take action" upon receipt of Plaintiff's complaint and that due to their "non-assistance," Plaintiff continued to be given Haldol. (Id.).

Plaintiff then sought assistance from the California Office of Patients' Rights, Department of State Hospitals, Atascadero. (Id. at 24). According to a Memorandum dated September 12, 2012 and directed to Dr. Cahill, the Patients' Rights Advocates assigned to Plaintiff's case expressed concern that Plaintiff's "involuntary medication order may not be legally supported" for several reasons. (Id. at 30). The Advocates emphasized in particular that Plaintiff was not present at the first hearing, despite his wish to participate, and was therefore deprived of the opportunity "to present evidence, to question persons presenting evidence, or to present his own witnesses." (Id. at 27). The Advocates further expressed concern that the second hearing focused on different "elements" than the first, was not comprised of the same panel, and was held on insufficient notice, in violation of Title 9 of the California Code of Regulations section 4210. (Id. at 28).

Plaintiff broadly claims that Defendants violated his Eighth Amendment, Due Process, and Equal Protection rights. (Id. at 6). Plaintiff states that he is "entitled to financial compensation for the cruel and unusual punishment of state authorities" forcing him to take drugs to which he was allergic and "for allowing such chaos to exist" in the medication review process. (Id. at 7).

## III.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss Plaintiff's Complaint due to defects in pleading. Pro se litigants in civil rights cases, however, must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. Accordingly, the Court grants Plaintiff leave to amend, as indicated below.

**A.   Defendants Are Immune From Suit In Their Official Capacities**

Section 1983 provides a cause of action against any "person" who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights. 42 U.S.C. § 1983. However, the Supreme Court has held that a state and its agencies are not "persons" under section 1983. See Will v. Michigan Department of State Police, 491 U.S. 58, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Because "'a suit against a state official in his or her official capacity . . . is no different from a suit against the State itself,'" state employees sued in their official capacities "are not

'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity." Flint v. Dennison, 488 F.3d 816, 824-25 (9th Cir. 2007) (quoting Will, 491 U.S. at 71); see also Snow v. McDaniel, 681 F.3d 978, 991 (9th Cir. 2012) ("[F]ederal courts are barred by the Eleventh Amendment from awarding damages against state officials acting in their official capacities.").

Plaintiff sues all Defendants in their official capacities only. (Complaint at 3-5). However, these state employees are immune from suits for damages in their official capacities. See Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992). As such, the Complaint is defective and must be dismissed. If Plaintiff intends to proceed with this action, he may sue individual state actors under section 1983 only in their individual capacities.

**B.   The Complaint Fails To Identify The Specific Defendants Who Plaintiff Claims Violated His Due Process Rights**

Plaintiff claims that Defendants violated his Fourteenth Amendment rights to both substantive and procedural due process when they medicated him against his will. As a civil detainee, Plaintiff's right to medical care is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. See Youngberg v. Romeo, 457 U.S. 307, 315, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982). Under this provision of the Constitution, Plaintiff is "'entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish'." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (quoting Youngberg, 457 U.S. at

321–22). Thus, to avoid liability, Defendants' decisions must be supported by "professional judgment." Youngberg, 457 U.S. at 321. A defendant fails to use professional judgment when his or her decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [he or she] did not base [his or her] decision on such a judgment." Id. at 323.

In determining whether a defendant has met his or her constitutional obligations, decisions made by the appropriate professional are entitled to a presumption of correctness. Id. at 324. "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at 321. Liability will be imposed only when the medical decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

The Supreme Court has not specified what minimum procedural safeguards are required in every situation, but has provided some guidance. Simon v. Montgomery, 2008 WL 2551297 at *8 (C.D. Cal. Jun. 25, 2008). For instance, in the prison setting, due process is satisfied when the decision to medicate an inmate against his will is facilitated by an administrative review by medical personnel not directly involved in the inmate's instant treatment. Washington v. Harper, 494 U.S. 210, 233, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990)

(involving prisoners rather than civil detainees). Due process also is satisfied if the inmate is provided with notice, the right to be present at an adversarial hearing, and the right to cross-examine witnesses.[5] Id. at 235.

Plaintiff broadly claims that his due process rights were "denied when the staff proceeded with a hearing without [him] being present." (Complaint at 6). It therefore appears that Plaintiff is challenging only his first Medication Review Hearing, because he was present at his second Medication Review Hearing. (See id. at 11-12). However, Plaintiff does not identify the specific staff members he believes are liable for this violation. The Involuntary Psychotropic Medical Review Hearing Decision indicates that Drs. De Guzman, Knowlton, Reiner and Fennel, Ms. Brady and Ms. McLean were involved to some degree in the first Medication Review Hearing. (Id. at 11). To the extent that Plaintiff wishes to contend that these or any other Defendant violated his due process rights, he should identify each Defendant by name and explain why each specific Defendant is liable. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (liability under § 1983 requires a showing either that the defendant was personally involved in the constitutional deprivation or that a "sufficient causal connection" exists between the defendant's wrongful conduct and the constitutional deprivation). Plaintiff must show how each Defendant's actions constituted a "substantial departure" from the exercise of professional

---

[5] However, Harper arose in the prison context, whereas the current case involves a civil detainee classified as an MDO. MDOs may have fewer protections against involuntary medication as they have already been adjudicated as mentally ill and possibly dangerous. See Simon, 2008 WL 2551297 at *8 n.5.

judgment. Youngberg, 457 U.S. at 323. Consequently, the Complaint must be dismissed, with leave to amend.

## C. **Plaintiff Fails To State An Eighth Amendment Claim**

Plaintiff broadly alleges that the administration of Haldol by Defendants constituted "Cruel and Unusual Punishment." (Complaint at 6). To the extent that Plaintiff is attempting to state a claim for deliberate indifference to serious medical needs under the Eighth Amendment, the Complaint fails to state a claim because as a civil detainee, Plaintiff's claims of inadequate medical care fall under the more protective standards of the Fourteenth Amendment, not the Eighth Amendment. Blanas, 393 F.3d at 931. Accordingly, the Complaint must be dismissed, with leave to amend.

## D. **Plaintiff Fails To State An Equal Protection Claim**

To allege an equal protection claim, Plaintiff must assert that defendants intentionally and without rational basis treated him differently from others similarly situated and intentionally discriminated against him. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008) (stating elements of equal protection claim).

Plaintiff asserts that Defendants violated his equal protection rights. (Complaint at 6). However, Plaintiff does not, and apparently cannot, claim that Defendants acted with an intent to discriminate against Plaintiff based on his membership in a protected class. Nor does Plaintiff allege facts showing that specific Defendants

intentionally treated him differently from other similarly situated persons without any rational basis for the difference in treatment. Accordingly, the Complaint fails to state an equal protection claim and must be dismissed, with leave to amend. Plaintiff is cautioned that in any Amended Complaint, he must correct any deficiencies or omit the deficient claim.

**E.    Plaintiff's Complaint Violates Federal Rule Of Civil Procedure 8**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Rule 8(e)(1) instructs that "[e]ach averment of a pleading shall be simple, concise, and direct." A complaint violates Rule 8 if a defendant would have difficulty responding to the complaint. Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011).

Plaintiff's Complaint fails to satisfy the requirements of Rule 8 because it does not put each individual Defendant on notice of which specific claim or claims Plaintiff contends the Defendant is liable for, and why. It is unclear exactly who Plaintiff claims is liable for his due process and equal protection claims, and why. It is also unclear whether Plaintiff is attempting to assert any constitutional violations in connection with his second Medication Review Hearing. Consequently, the Complaint must be dismissed, with leave to amend.

**IV.**

**CONCLUSION**

For the reasons stated above, the Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order to file a First Amended Complaint. In any amended complaint, the Plaintiff shall **cure the defects** described above. The First Amended Complaint, if any, shall be complete in itself, including any attached exhibits, and shall bear both the designation "First Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to the original Complaint.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, <u>a copy of which is attached</u>**. In any amended complaint, the Plaintiff should make clear the nature and grounds for each claim and specifically identify the Defendants he maintains are liable for that claim. Furthermore, the First Amended Complaint may not include new Defendants or claims not reasonably related to the allegations in the Complaint. Each page of the First Amended Complaint, including any attached exhibits, must be legible and consecutively numbered.

Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). **Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience**.

DATED: September 20, 2013

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**